**THE LAW OFFICES OF LEON OZERAN**
Leon Ozeran, Esq., CA Bar No.: 296071
5404 Whitsett Ave., Suite 212
Valley Village, CA 91607
Tel: (310) 461-3730
Email: leon@ozeranlaw.com

Attorneys for Plaintiff
RUFFINA YURYEVA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RUFFINA YURYEVA, individually, and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>   v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>            Defendant. | Case No.  2:26-cv-5821<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RUFFINA YURYEVA ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint ("Complaint") against Defendant THE PROCTER & GAMBLE COMPANY ("Defendant"), and alleges, upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     This is a consumer false-advertising class action arising from Defendant's labeling, advertising, marketing, packaging, and sale of Always-branded

menstrual pads and/or related absorbent products that are represented to provide "up to 100% leak-free protection," "up to 100% leak-free comfort," "up to zero leaks," "up to 100% leak and odor free," and other substantially similar leak prevention claims ("leak-free representations") (the "Products").[1] The Products are available in a variety of styles, sizes, and features, each with the same or substantially the same leak-free representations made on the Product packaging.

2.      Defendant's leak-free representations are material. Menstrual pads are purchased for one overriding functional purpose: to absorb menstrual flow and prevent leakage onto underwear, clothing, bedding, and other surfaces. A representation that a pad provides "up to 100% leak-free comfort" or makes other leak-free representations communicates to reasonable consumers that the product will prevent leaks.

3.      The leak-free representations convey an objective, measurable, and absolute performance message: that the Products prevent leaks completely, or at minimum virtually completely.

4.      The deception is reinforced by Defendant's use of absolute and near-absolute language, including "100%," "leak-free," "zero leak," "LeakGuard," "locks in leaks," "max protection," and duration representations such as "ALL DAY PROTECTION," "up to 8 hours," "up to 10 hours," "up to 11 hours," and "up to 12 hours" of protection.

5.      The deception is further reinforced by the Products' name – Always. "Always" means at all times, in every instance, without exception, and that, when paired with the leak-free representations, reinforces and amplifies the impression of continuous, unfailing protection.  Plaintiff does not allege that the word "Always," standing alone, is actionable. But when the brand name "Always" appears together

---

[1] "Products" includes all sizes and styles of all product lines making the leak-free representations, including, but not limited to, Always Ultra Thin, Always Radiant Teen, Always Radiant, Always Maxi, Always Pocket, Always Infinity, and Always Pure Cotton.

with "100% leak-free," "100% leak protection," and "up to 100% leak-free protection" claims, the name reinforces the net impression that consumers can depend on leak prevention.

6.      Defendant's leak-free representations are misleading because the Products do not provide complete leak-free protection or comfort.  Indeed, leakage occurs.  Leakage is a routine and frequent occurrence for Always users.

7.      The "up to" qualifier does not — and cannot — cure the deception. Read literally, "up to 100% leak-free" is a logical tautology: every product on the market could conceivably perform "up to 100%" its intended function.  The phrase therefore conveys no substantive product information when read literally.

8.      Defendant does not disclose the conditions under which the Products allegedly provide 100% leak-free protection, the percentage of consumers or uses for which 100% leak-free performance is achieved, whether the claim is based on ordinary consumer use or controlled laboratory testing, or whether 100% leak-free protection depends on limitations such as flow level, pad placement, body position, movement, duration of use, absorbency level, or nighttime versus daytime use.

9.      Furthermore, reasonable consumers do not perceive the "up to" qualifier and instead receive the dominant "100% Leak Free" (or similar) message.

10.     Plaintiff and class members paid a premium for Always pads based on these challenged representations.  Had they known the truth, they would not have purchased the Products, or would have paid less for them.

11.     Plaintiff purchased the Products in Los Angeles, California, relied on Defendant's leak-free representations, and paid more than she otherwise would have paid, or would not have purchased the Products at all, had she known the truth.

12.     Plaintiff brings this action under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; and Unfair Competition Law

("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. on behalf of all consumers in California.

## PARTIES

13.     Plaintiff Ruffina Yuryeva is, and at all relevant times was, a citizen and resident of Los Angeles, California.

14.     Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

15.     Defendant manufactures, markets, labels, advertises, distributes, and sells Always-branded products throughout the United States, including in California and this District.

16.     Defendant designed, authorized, approved, disseminated, and/or controlled the challenged labeling and advertising for the Products.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs; and (iii) minimal diversity exists.

18.     This Court has personal jurisdiction over Defendant because Defendant purposefully directs, markets, distributes, and sells the challenged products in California, including in this District, and derives substantial revenue from those sales.

19.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of the challenged product and exposure to the challenged representations.  Defendant also markets, distributes, and sells Always products in this District.

COMPLAINT

**FACTUAL BACKGROUND**

**A. Plaintiff's Experience**

20.     During the Class Period, Plaintiff relied on Defendant's deceptive labeling claims and material omissions and purchased one or more Always Products bearing the challenged "up to 100% leak-free protection," "100% leak protection," "100% leak-free," "leak-free," or substantially similar claims.

21.     In Fall 2025, Plaintiff purchased Always Ultra Thin pads from Target which contain the front-label statements: "up to 100% leak-free comfort," "always," and "ALL DAY PROTECTION."

22.     Plaintiff also purchased Always Infinity FlexFoam from CVS in 2025. Infinity FlexFoam front label states "up to ZERO FEEL ZERO LEAKS" and "always."

23.     Plaintiff saw and relied on the respective front-label leak-protection representation for each Product when making her purchases.  Both times, Plaintiff understood the leak-protection representation to mean that the Products would provide complete 100% leak-free protection during use.  However, she experienced leaks when using the Products.

24.     Plaintiff would not have purchased the Products, or would have paid less for them, had Plaintiff known that the challenged claims were false or misleading.

25.     Plaintiff remains interested in purchasing menstrual pads or similar absorbent products that truthfully provide complete or virtually complete leak-free protection.   However, Plaintiff cannot rely on Defendant's current or future representations absent correction because Plaintiff cannot determine from the label whether the challenged claims are truthful, what "100%" means, or under what conditions the Products allegedly achieve the promised result.

**B. The Products and the Challenged Representations**

26.    Always is one of the leading brands of menstrual pads, pantiliners, and related absorbent products in the United States.

27.    Defendant sells the Products through major retailers, grocery stores, drug stores, mass-market retailers, online retailers, and Defendant-controlled or Defendant-authorized digital channels.

28.    The Products are sold at a premium price compared with competing products and private-label alternatives.

29.    The Products' front labels, packaging, online product listings, and advertisements represent that the Products provide 100% leak-free performance.

30.    Examples of challenged representations include:

      a.    "up to 100% leak-free protection";

      b.    "up to 100% leak free comfort";

      c.    "up to 100% leak free";

      d.    "up to 100% leak and odor-free protection";

      e.    "up to zero leaks";

      f.    "up to zero feel zero leaks";

      g.    "up to zero leak, zero feel, and zero bunching"; and,

      h.    Similar statements emphasizing complete or virtually complete leak prevention.

31.    The challenged representations are uniform and/or substantially similar across all Products during the class period.

COMPLAINT

32.    Some of the Products and related marketing are displayed here:







COMPLAINT







COMPLAINT

33. Defendant's challenged claims are objective performance claims, not mere puffery. Whether a product provides 100% leak-free protection is capable of verification.

34. Reasonable consumers understand "100% leak protection" and "100% leak-free" to convey that the Products prevent leaks completely, or at minimum virtually completely, during ordinary use.

35. Reasonable consumers understand "up to 100% leak-free protection" to convey that 100% leak-free performance is a meaningful and realistically attainable product benefit, not an undisclosed, theoretical maximum divorced from ordinary consumer experience. Reasonable consumers do not understand the challenged claims to mean only that the products may reduce some leaks, may help prevent leaks in some circumstances, or may perform well under undisclosed laboratory conditions.

36. The "up to" claim is unaccompanied by substantive limiting language identifying a comparator, testing condition, benchmark, frequency, duration, consumer population, or ordinary-use limitation. Nor does it explain how often, for whom, or under what circumstances 100% leak-free performance is allegedly achieved. The phrase therefore does not cabin the challenged claim; it leaves consumers with the dominant net impression of complete or virtually complete leak protection.

37. Consumers rely on the leak-free representation when making their purchase decision and are damaged as a result.

38. Defendant's leak-free representations are prominent, uniform, and material. They are not incidental. They are part of product identity and the central sales message.

**C. The Challenged Claims Are Misleading**

39. Menstrual pads are purchased to absorb menstrual flow and prevent leaks. Leakage prevention is central to the product's value.

40. Defendant's "100% leak-free" representations are specific, measurable, and material performance claims.

41. The challenged claims are misleading because Always pads are not 100% leak-free under normal and foreseeable use conditions.

42. Indeed, the Products leak.

43. Defendant's own marketing recognizes that consumers experience different flow levels and need different pad sizes, including larger overnight pads and larger back coverage to "help stop leaks." Yet, Defendant includes the unqualified or near-unqualified message of "100% leak-free" performance prominently on the front label.

44. Defendant's "up to" qualifier does not cure the deception. The words "up to" appear significantly smaller than the "100% leak-free" representation and are accompanied by reinforcing claims such as "all day protection," "up to 8 hours," "up to 10 hours," "up to 11 hours," and "up to 12 hours" of protection, "zero leak," "max protection," and "locks in leaks":









45.    In context, the challenged claims convey that the Products will be leak-free, not that 100% leak-free performance is merely a best-case result.  The Always

brand name reinforces that net impression when presented together with the challenged leak-free representations.

46.    Plaintiff alleges that Defendant's representations are affirmatively false or misleading to reasonable consumers.

**D. Leakage Protection is Central to Consumers' Purchase Decision**

47.    The intended purpose of menstrual pads and similar absorbent products is to absorb fluid and prevent leaks.

48.    Consumers purchase the Products to avoid leakage, staining, embarrassment, discomfort, odor, additional clothing changes, and other consequences associated with product failure.

49.    Because leakage prevention is central to the Products' function, leak-protection claims are material to reasonable consumers.

50.    A reasonable consumer deciding among competing menstrual pads and similar products would consider the leak-free representations important to the purchase decision.

51.    Defendant knows that leakage prevention is material because it prominently places the challenged claims on packaging and in advertising.

52.    Defendant's marketing strategy targets consumers' fear of leaks and uses the "100%" claims to differentiate the Products from competitors.

**E. The "Up To" Qualifier Does Not Cure the Misleading Net Impression**

53.    The "up to" phrase does not transform the challenged claims into a mere maximum-result statement.

54.    Defendant's specific "up to 100% leak-free protection" claim is misleading because of the claim's wording, context, product category, and net impression.

55.    The challenged claim uses the highest possible numerical performance representation: 100%.

56.     In the context of leak prevention, "100%" conveys complete protection. It is not a vague comparative term or a subjective opinion.

57.     The phrase "up to" does not inform consumers how often, under what conditions, or for whom the Products allegedly achieve 100% leak-free protection.

58.     A reasonable consumer who sees "up to 100% leak-free protection" on the front of a menstrual pad or similar absorbent product would not understand it to mean merely that leaks might be prevented in some idealized, undisclosed, or atypical circumstances.

59.     If "up to 100% leak-free protection" means only that the Products may prevent leaks sometimes, then the claim is functionally meaningless because any product that prevents leaks in at least some uses could make the same claim.

60.     Under that interpretation, the phrase "up to 100%" would communicate nothing about product quality, reliability, superiority, or expected performance.

61.     Consumers do not understand front-label advertising claims to be meaningless.  Consumers reasonably expect that a prominent "up to 100% leak-free protection" claim communicates a real, substantiated product benefit.

62.     Consumers already expect menstrual pads and similar products to perform their intended function by providing some level of leak protection. A statement that the Products are merely "up to 100%" effective at that ordinary function adds no meaningful information unless consumers understand it as communicating complete or virtually complete leak protection.

63.     Defendant's interpretation would render the advertising statement illusory: the Products could leak frequently in ordinary use yet still be advertised as "up to 100% leak-free" so long as some users sometimes experience no leaks.

64.     California consumer-protection law does not permit marketers to use technically defensible wording to create a misleading net impression.

65.     The "up to" qualifier is also ineffective because Defendant emphasizes "100%," "leak-free," and "protection," which are the dominant takeaways.

13
COMPLAINT

66. On the Products' packaging, "100%," "Leak Free," "Leak-Free Comfort," or similar language appears more prominently than the words "up to." The "up to" phrase is visually subordinate and does not clearly disclose that 100% leak-free performance is merely a best-case, atypical, or conditional result.

67. Many reasonable consumers either do not notice "up to" or do not understand it to negate the absolute 100% leak-protection message.

68. Even consumers who notice "up to" reasonably interpret the claim as representing that 100% leak-free performance is reasonably attainable during ordinary use.

69. Defendant's failure to disclose the conditions, likelihood, and limitations of the claimed 100% performance makes the claim misleading.

**F. The Brand Name "Always" Reinforces the Misleading Message**

70. Defendant markets the Products under the brand name "Always."

71. Plaintiff does not allege that the brand name "Always," standing alone, is false or independently actionable.

72. But the brand name appears together with the challenged leak-free protection claims.

73. In that context, the name "Always" reinforces the net impression that the Products reliably and consistently prevent leaks.

74. The combined message is stronger than the challenged claims viewed in isolation. Consumers see the brand name "Always" together with "100% leak-free" and reasonably understand that the Products are represented to provide dependable, complete, or virtually complete leak protection.

75. The reinforcing effect of the brand name is particularly important because the challenged claims concern the Products' central function.

76. Defendant's use of the brand name in proximity to absolute leak-protection claims amplifies the misleading net impression.

COMPLAINT

77.    Plaintiff's claims arise under California consumer-protection and warranty law and are based on Defendant's affirmative misrepresentations and omissions to consumers.

**G.    The FDA Regulatory Framework for Menstrual Product Labeling**

78.    Menstrual pads are classified as medical devices and regulated by the U.S. Food and Drug Administration.  Unscented Always pads (including Always Maxi and Always Ultra Thin core variants) are classified under 21 C.F.R. § 884.5435 (product code HHD) as Class I, 510(k)-exempt devices.  Scented and scented-deodorized Always pads (including Always Radiant scented variants) are classified under 21 C.F.R. § 884.5425 as 510(k)-exempt devices.

79.    All medical devices are subject to the labeling requirements of 21 C.F.R. Part 801 and to the misbranding prohibitions of the Federal Food, Drug, and Cosmetic Act ("FDCA").  Pursuant to 21 U.S.C. § 352(a), a device is deemed misbranded if its labeling is "false or misleading in any particular."  Pursuant to 21 U.S.C. § 321(n), in determining whether labeling is misleading, "there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or in any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in light of such representations."

80.    Pursuant to 21 U.S.C. § 352(c), a device is misbranded if any required labeling information "is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."

81.    On November 17, 2025, the FDA's Center for Devices and Radiological Health published a Draft Guidance titled Menstrual Products — Performance Testing and Labeling Recommendations (Docket No. FDA-2025-D-5107), announced in the Federal Register at 90 Fed. Reg. 51371 (Nov. 17, 2025).

82. The Draft Guidance directly addresses misleading menstrual product labeling.  It states:

> Accurate, clear device labeling is important to make users aware of the risks, limitations, and directions for use of menstrual products. Manufacturers should not make unsubstantiated statements related to the function of any component or purpose of any ingredient. Moreover, a device shall be deemed misbranded if, among other things: its labeling is false or misleading; its labeling does not contain adequate warnings; or any information required to be in the labeling is not prominently placed with such conspicuousness and in such terms to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use (see sections 201(n), 502(a), 502(c), and 502(f)(2) of the FD&C Act).

FDA Draft Guidance § VII, p. 23 (October 2025).

83. California's Sherman Food, Drug, and Cosmetic Law incorporates the federal misbranding standards.  Cal. Health & Safety Code § 111330 provides that "[a]ny device is misbranded if its labeling is false or misleading in any particular."  Cal. Health & Safety Code § 111335 establishes parallel prominence and conspicuousness requirements.  Cal. Health & Safety Code § 111375 requires adequate directions and warnings.

84. Plaintiff does not seek to enforce the FDCA.  Plaintiff's claims arise under California consumer-protection and warranty law.  The FDA and Sherman Law provisions are relevant because they reflect parallel standards prohibiting false or misleading device labeling and requiring material information to be presented clearly.

**H. FTC Guidance and Enforcement Regarding "Up To" Claims Support Plaintiff's Theory**

85. The phrase "up to" does not cure the deception.  The Federal Trade Commission has long recognized that "up to" claims may mislead consumers when they communicate a maximum result that consumers reasonably understand to be typical, generally attainable, or otherwise meaningful.

COMPLAINT

86.   In a 2012 FTC-commissioned study concerning "up to" advertising claims, the FTC found that many consumers understand "up to" claims as promising the maximum advertised result.[2]

87.   Where an advertiser promotes a maximum result, the advertiser should not omit material information about the conditions under which that result can be achieved, whether the result is typical, and whether ordinary consumers can expect to obtain it.

88.   FTC actions involving "up to" claims, including matters involving earnings or performance claims, reflect the principle that a maximum-result claim may be misleading when consumers are not told that the maximum is atypical, dependent on undisclosed conditions, or not generally attainable.

89.   Defendant promotes a maximum and absolute result—100% leak-free protection—without telling consumers how often that result occurs, whether it is typical, whether it reflects ordinary use, or what conditions must exist for consumers to obtain it.

90.   Because "100% leak-free protection" is the precise benefit consumers seek when purchasing the Products, the omission is material.

91.   Reasonable consumers are not told that the claimed "100% leak-free" result is limited to undisclosed conditions, particular flow levels, a particular pad size, ideal positioning, limited movement, limited duration, laboratory settings, or other circumstances that do not reflect ordinary real-world use.

---

[2] "An FTC-commissioned study indicating that when marketers use the phrase 'up to' in claims about their products, many consumers are likely to believe that they will achieve the maximum 'up to' results." *See* https://www.ftc.gov/reports/effects-bristol-windows-advertisement-savings-claim-consumer-take-away-beliefs (last visited May 28, 2026).

## I. "Up To 100% Leak-Free" Is a Vacuous Maximum Claim

92. Defendant's "up to 100% leak-free" claims are misleading for an additional reason: they use an absolute maximum — 100% — in a way that makes the qualifier "up to" functionally meaningless.

93. Any menstrual pad, including an inferior or generic product, can be described as "up to 100% leak-free" if it does not leak during some uses, for some consumers, under some conditions. A product either leaks or it does not leak in a given use. If a pad happens not to leak during a particular wearing occasion, it could be characterized as 100% leak-free for that occasion.

94. Thus, if Defendant's "up to 100% leak-free" claim means only that the Products may sometimes prevent leaks, the claim is a truism that communicates no meaningful product advantage and provides no useful information to consumers.

95. But that is not how reasonable consumers understand Defendant's marketing. Defendant does not present the challenged claims as a trivial statement that the Products may sometimes avoid leaks. Defendant presents them as prominent performance claims that distinguish the Products from competing products and assure consumers of superior leak protection.

96. In context, reasonable consumers understand "up to 100% leak-free protection," "up to 100% Leak Free Comfort," and similar claims to mean that the Products are designed and expected to provide complete or virtually complete leak protection under normal and foreseeable use conditions.

97. The misleading nature of the claim is heightened because Defendant combines the "up to 100%" language with other absolute or near-absolute claims, including "leak-free," and "zero leak."

98. Defendant's challenged claims therefore operate in one of two misleading ways. Either they are meaningless because virtually any menstrual pad can be described as "up to 100% leak-free" in some circumstances, or they misleadingly communicate to reasonable consumers that the Products provide

complete or virtually complete leak protection under normal use.  Under either reading, the claims are deceptive because they cause consumers to believe they are receiving a meaningful, superior leak-prevention benefit that the Products do not deliver.

99.    Reasonable consumers paid a premium for the Products because they understood Defendant's challenged claims to communicate a meaningful leak-prevention benefit, not a tautology that the Products may avoid leaks some of the time.

### J.  Materiality, Reliance, and Injury

100.   The challenged representations are material because leak prevention is a primary reason consumers purchase menstrual pads.

101.   Defendant intended consumers to rely on the challenged leak-free representations.

102.   Defendant placed the challenged representations on packaging, product pages, advertisements, and retailer listings because it knew the claims would influence purchasing decisions.

103.   Plaintiff saw, read, and relied on the challenged representations before purchasing the Product.

104.   Class members were exposed to the same or substantially similar challenged representations through uniform packaging, online product listings, and advertising.

105.   Plaintiff and class members paid more for the Products than they otherwise would have paid, or purchased Products they otherwise would not have purchased, because of Defendant's misleading representations.

106.   The Products were worth less than represented.

107.   Plaintiff and class members suffered economic injury, including overpayment and loss of the benefit of the bargain.

COMPLAINT

**K. Defendant's Knowledge**

108. Defendant knew or should have known that the challenged representations were false or misleading.

109. Defendant possesses specialized knowledge regarding the design, absorbency, testing, performance limits, consumer complaints, returns, reviews, market research, and real-world performance of the Products.

110. Defendant knew that menstrual pad performance varies based on flow, duration, movement, sleep position, pad fit, bunching, and other ordinary conditions of use.

111. Defendant knew that the Products do not provide 100% leak-free protection for all or nearly all consumers under normal use.

112. Defendant nevertheless continued to market the Products using the challenged representations to increase sales and command a price premium.

**L. The Challenged Claims Caused Economic Injury**

113. Plaintiff and Class members paid money for Products they would not have purchased, or would have paid less for, absent Defendant's misleading claims.

114. The challenged claims allowed Defendant to charge a price premium over competing products and private-label alternatives.

115. Plaintiff and Class members did not receive the benefit of their bargain because the Products did not provide the complete or virtually complete leak-free protection represented.

116. Plaintiff and Class members suffered economic injury in the amount of the purchase price paid, the price premium paid, or the difference between the Products as represented and the Products as received.

**NO ADEQUATE REMEDY AT LAW**

117. Plaintiff seeks equitable relief, including restitution and injunctive relief, in the alternative and to the extent permitted by law. Plaintiff does not seek duplicative recovery for the same injury. Rather, Plaintiff pleads equitable remedies

COMPLAINT

because legal remedies alone are not adequate to address the full scope of Defendant's alleged misconduct and the continuing harm caused by Defendant's challenged labeling and advertising.

118. First, monetary damages are inadequate to remedy Plaintiff's and the Class's prospective injuries. Damages cannot require Defendant to stop using the challenged leak-free representations, cannot require Defendant to correct or clarify its labeling and advertising, cannot require Defendant to disclose the conditions or limitations of the challenged claims, and cannot prevent consumers from being misled in future transactions. Plaintiff continues to desire to purchase menstrual pads and related absorbent products, including Always Products, if they are truthfully labeled and advertised. But absent injunctive relief, Plaintiff cannot determine from Defendant's current labeling whether the challenged representations are accurate, what "100% leak-free" or "up to 100% leak-free" means, whether the claimed performance reflects ordinary use, or whether the claimed result depends on undisclosed conditions such as flow level, pad placement, duration of use, movement, absorbency level, sleep position, or laboratory testing conditions.

119. Second, legal damages are inadequate to restore Plaintiff's ability to rely on Defendant's representations in the marketplace. The injury is not limited to the amount Plaintiff paid in the past. Defendant's continuing use of the challenged representations threatens ongoing consumer confusion and prevents Plaintiff and other consumers from making informed future purchasing decisions. Prospective injunctive relief is therefore necessary to stop the challenged practices and to ensure that Defendant's future labeling and advertising are accurate, complete, and non-misleading.

120. Third, Plaintiff seeks equitable restitution under the UCL and FAL in the alternative to legal damages. At this stage, Plaintiff cannot determine whether legal remedies will fully compensate Plaintiff and the Class because the amount of any price premium, the scope of Defendant's sales, the extent of Defendant's unjust

gains, and the difference between the Products as represented and as received are matters within Defendant's possession and require discovery. Plaintiff also seeks restitutionary relief to restore money Defendant obtained through the challenged conduct to the extent such relief is not fully available through legal damages.

121. Fourth, equitable relief is independently appropriate because Plaintiff challenges ongoing uniform labeling and advertising practices. A damages award would compensate, at most, past economic injury; it would not require Defendant to change its conduct going forward. Without equitable relief, Defendant may continue to market the Products using the same or substantially similar challenged representations, and consumers will continue to face the same risk of deception. Accordingly, Plaintiff pleads equitable relief in the alternative under Federal Rule of Civil Procedure 8(d). If the Court later determines that Plaintiff has an adequate remedy at law for some or all of her requested equitable relief, Plaintiff respectfully requests leave to conform her remedies to the evidence and applicable law.

## CLASS ACTION ALLEGATIONS

122. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of all members of the following putative class:

> All persons who, during the applicable limitations period, purchased in California, for personal, family, or household use and not for resale, one or more Always-branded menstrual pad or related absorbent products bearing the representation "up to 100% leak-free protection," "up to 100% leak-free comfort," "up to zero leaks," "up to 100% leak and odor free," "100% leak-free," "zero leak," or substantially similar leak-prevention claims.

123. Excluded from the Class are Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,

and assigns, as well as any entity in which Defendant has a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class.

124. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

125. **Numerosity:** The members of the Class number in the thousands. As a result, joinder of individual plaintiffs is impracticable. The disposition of Plaintiff's claims will provide a substantial benefit to the persons and the court system by using Rule 23 as the vehicle to adjudicate the rights of hundreds or thousands of individuals in one cause of action. Joining and naming each Class member as a co-plaintiff is unreasonable and impracticable.

126. **Commonality and Predominance:** Questions of law or fact common to members of the Class exist that predominate over questions of law or fact affecting only individual members. The questions of law or fact common to all members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. whether "leak-free protection" claims communicate a meaningful and attainable performance benefit;

d.  whether the "up to" qualifier cures or fails to cure the misleading net impression;

e.  Whether Defendant made material misrepresentations concerning the Products that were likely to deceive the public;

f.  Whether Defendant made material omissions concerning the Products that were likely to deceive the public;

g.  Whether Plaintiff and the Class are entitled to injunctive relief;

h.  Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

127.  **Typicality:**  The claims by Plaintiff are substantially similar to the claims of the entire Class and are typical of the claims of the Class.

128.  **Adequacy of Representation:**  Plaintiff will fairly and adequately represent the interests of the Class.  The interests of the Class are not antagonistic with the interests of any individual Plaintiff.  Plaintiff has the ability to assist and adequately protect the rights of the Class during the litigation.  Further, Plaintiff is represented by legal counsel who is competent and experienced in products liability cases and in complex litigation, including class action litigation.

129.  **Superiority:** The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

a.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class;

b.  The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective members of the Class;

c.   In view of the complexity of the issues and the expense of litigation, the separate claims of the individual Class members are insufficient in amount to support the prosecution of separate actions because such members would lack the economic incentive to prosecute such actions; and,

d.   The Class members have a common and undivided interest to ensure that consumers do not continue to purchase mislabeled Products.

e.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

f.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

130.   Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

131.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

132.   Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## COUNT ONE

## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")

## Cal. Civ. Code §§ 1750 *et seq.*

133. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

134. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

135. Plaintiff and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

136. At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

137. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

138. Defendant's sale and marketing of the Products constituted "transactions" within the meaning of the CLRA.

139. Defendant violated the CLRA by representing that the Products had characteristics, uses, benefits, and qualities they did not have, in violation of Cal. Civ. Code § 1770(a)(5).

140. Defendant violated the CLRA by representing that the Products were of a particular standard, quality, or grade when they were of another, in violation of Cal. Civ. Code § 1770(a)(7).

141. Defendant's challenged claims misrepresented that the Products provide complete or virtually complete leak-free protection during ordinary and intended use.

142. Defendant's challenged claims also misrepresented that the "100%" leak-protection representation was meaningful, substantiated, and realistically attainable for ordinary consumers.

143.   Defendant's use of "up to" did not cure the deception because Defendant failed to disclose the conditions, likelihood, and ordinary-use limitations of the alleged 100% performance.

144.   Defendant's conduct was likely to deceive reasonable consumers.

145.   Plaintiff and Class members reasonably relied on Defendant's challenged claims.

146.   Defendant's misrepresentations and omissions were material because leak prevention is a central attribute of the Products.

147.   Plaintiff and Class members suffered economic injury by purchasing Products they would not have purchased, or by paying more than they otherwise would have paid.

148.   Plaintiff provided Defendant with notice of its CLRA violations by letter dated April 6, 2026, sent via certified mail, and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful practices described herein.

149.   Plaintiff seeks all relief permitted by the CLRA, including injunctive relief, actual damages, restitution, punitive damages as permitted, attorneys' fees, and costs.

150.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

151.   Plaintiff and Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and Class members overpaid for the Products and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

152.   Under Cal. Civ. Code § 1780(a), Plaintiff and Class members seek monetary relief against Defendant for the harm caused by Defendant's violations of the CLRA as alleged herein.

153. Plaintiff and Class members also seek punitive damages against Defendant because its unlawful conduct constitutes malice, oppression, and fraud under Cal. Civ. Code § 3294.

154. Plaintiff and Class members seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under CLRA.

## COUNT TWO

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (UCL)

## Cal. Bus. & Prof. Code § 17200, *et seq.*

155. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

156. Plaintiff brings this count individually and on behalf of members of the Class.

157. California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

158. **Unlawful Prong.** Defendant's conduct is unlawful because it violates the California Sherman Law, Cal. Health & Safety Code §§ 111330, 111335, and 111375; the CLRA; and the FAL.

159. **Unfair Prong.** Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed

to disclose a material fact of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

160. **Fraudulent Prong.** Defendant's conduct is fraudulent because members of the public are likely to be deceived by the leak-free representation. The FTC's 2012 "up to" study found that that consumers do, in fact, perceive "up to" claims of this character as representations of typical and expected performance.

161. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

162. Defendant's wrongful business practices and violations of the UCL are ongoing.

163. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

164. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of

California that do not comply with advertising laws; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## COUNT THREE

### VIOLATION OF THE FALSE ADVERTISING LAW (FAL)

### Cal. Bus. & Prof. Code § 17500, et seq.

165. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

166. Plaintiff brings this count individually and on behalf of members of the Class.

167. California Bus. & Prof. Code § 17500 states: "It is unlawful for any person, … corporation …or any employee thereof with intent directly or indirectly to dispose of real or personal property… or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

168. Defendant made or caused to be made and disseminated throughout California and the United States, through advertising, marketing, and other publications, numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and Class members. Numerous examples of these statements and advertisements appear throughout this Complaint.

169. Pursuant to Cal. Bus. & Prof. Code § 17500, Plaintiff and the Class seek an order enjoining Defendant's false advertising, any such orders or judgments as

may be necessary to restore to Plaintiff and the Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available.

## COUNT FOUR

### BREACH OF EXPRESS WARRANTY

### Cal. Com. Code § 2313

170. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

171. Plaintiff brings this count individually and on behalf of members of the Class.

172. Through its packaging and marketing — including, in particular, the prominent '100% Leak Free' family of claims — Defendant made affirmations of fact and descriptions of the goods that became part of the basis of the bargain between Defendant and Plaintiff (and the Class), creating express warranties that the Always pads provide 100% leak-free protection. Cal. Com. Code § 2313(1)(a)–(b).

173. Defendant breached the express warranties because the Products do not provide 100% leak-free protection.

174. To the extent Defendant contends that the "up to" qualifier limited the express warranties to a theoretical maximum unattainable in ordinary use, such purported limitation was not clear and conspicuous as California Commercial Code § 2316(1) requires to limit an express warranty. The "up to" qualifier appeared in dramatically smaller, lower-contrast typography than the warranty representations it purported to qualify; identified no comparator class, no use condition, no testing protocol, and no benchmark; and would, if read as Defendant would now read it, render the warranty illusory by allowing Defendant to advertise "100% Leak Free" performance (or similar) for products that leak in ordinary use, so long as some user, on some occasion, under some undisclosed condition, experienced no leakage. A purported limitation in which the limitation entirely swallows the underlying promise

is not effective to limit an express warranty as a matter of California law. The express warranties therefore extend to the unqualified "100% Leak Free" representations as reasonable consumers received them.

175.   Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, including by paying a price premium and/or by purchasing a product they would not have purchased absent the breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant granting the following relief:

    a.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

    b.   Ordering restitution and restitutionary disgorgement of money Defendant obtained from Plaintiff and the Class as a result of the challenged practices;

    c.   Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

    d.   Ordering damages for Plaintiff and the Class;

    e.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

    f.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and,

    g.   Such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  May 29, 2026                    **THE LAW OFFICES OF LEON OZERAN**


By:        */s/ Leon Ozeran*
           LEON OZERAN

           Attorney for Plaintiff

COMPLAINT